1
2
3
4
5
6
7

8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 ERIC VALENTINE, | ) Case No.: 1:13-cv-00394-JLT |
| 12    Petitioner, | ) ORDER DENYING PETITION FOR WRIT OF |
| 13 v. | ) HABEAS CORPUS (Doc. 1) |
| 14 WARDEN COPENHAVER, | ) ORDER DIRECTING THAT THE CLERK OF THE |
| 15    Respondent. | ) COURT ENTER JUDGMENT AND CLOSE THE |
| | ) FILE |
| 16 | ) NO CERTIFICATE OF APPEALABILITY IS |
| 17 | ) REQUIRED |

18

19       Petitioner was convicted in 2005 and 2011 for bank robbery.  In both actions, the courts

20 sentenced him to prison and ordered him to pay restitution and special assessments.  In this action,

21 petitioner claims that the Bureau of Prison's policy of deducting funds from his prison trust account to

22 repay these amounts is unlawful because the sentencing courts failed to set forth a timetable for the

23 payments.  For the reasons set forth below, the Court **DENIES** the petition.

24                                    **PROCEDURAL HISTORY**

25       Petitioner is in the custody of the Bureau of Prisons.  He was sentenced in 2005 to 73-months at

26 the United States Penitentiary, Atwater, California, for his conviction in the United States District Court

27 for the Northern District of Illinois for bank robbery in violation of 18 U.S.C. § 2113(a).  (Doc. 17,

28 Daniel Decl., Attach. 1).  Along with the prison term, the court ordered Petitioner to pay a special

1   assessment of $300 and restitution of $50,867.  (Id.).  In 2011, Petitioner was convicted in the Northern

2   District of Illinois for bank robbery and was sentenced to 105 months in prison and ordered to pay

3   restitution in the amount of $5,320. (Daniel Decl., Attach. 4).

4       In this action, Petitioner challenges the BOP's policy of regularly withdrawing funds from his

5   prison account to satisfy the restitution orders pursuant to the Inmate Financial Responsibility Program.

6   Petitioner alleges the BOP's collection of restitution under the IFRP is illegal because, even though the

7   sentencing court specified the amount to be paid, it failed to set forth a specific timetable for those

8   payments.  (Doc. 1, pp. 1-5). Petitioner also contends the sentencing court ordered that payments be

9   made to the Clerk of the Court and not to the BOP.  (Id.).

10                                    **DISCUSSION**

11       A.  Jurisdiction.

12       A federal court may not entertain an action over which it has no jurisdiction.  Hernandez v.

13   Campbell, 204 F.3d 861, 865 (9th Cir. 2000).  A federal prisoner challenging the manner, location, or

14   conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C.

15   § 2241.  Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998);  United States v. Tubwell, 37 F.3d

16   175, 177 (5th Cir. 1994); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United

17   States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991);  Barden v. Keohane, 921 F.2d 476, 478-79 (3rd

18   Cir. 1991);  United States v. Hutchings, 835 F.2d 185, 186-87 (8th Cir. 1987); Brown v. United States,

19   610 F.2d 672, 677 (9th Cir. 1990).

20       Here, Petitioner is challenging the manner in which the order of restitution and payment of a

21   Special Assessment is being executed by the Bureau of Prisons.  Accordingly, Petitioner is challenging

22   the manner, location or conditions of his sentence and, thus, proceeding under § 2241 is appropriate.

23   Hence, the Court has jurisdiction to proceed.

24       B.  Exhaustion.

25       It is well settled that federal prisoners must generally exhaust their federal administrative

26   remedies prior to filing a habeas corpus petition pursuant to 28 U.S.C. § 2241.  See Martinez v.

27   Roberts, 804 F.2d 570, 571 (9th Cir.1986) (per curiam) ("Federal prisoners are required to exhaust their

28   federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal

2

1  court."); see also Huang v. Ashcroft, 390 F.3d 1118, 1123 (9th Cir.2004); Fendler v. U.S. Parole

2  Comm'n, 774 F.2d 975, 979 (9th Cir.1985).  While the exhaustion requirement is not jurisdictional, its

3  importance is well established. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990), overruled on

4  other grounds, Reno v. Koray, 515 U.S. 50 (1995); see also Singh v. Napolitano, 649 F.3d 899, 900

5  (9th Cir.2011) (per curiam) (as amended) ("In order to seek habeas relief under section 2241 ... a

6  petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies.")

7  (citation omitted); Castro–Cortez v. Immigration & Naturalization Serv., 239 F.3d 1037, 1047 (9th

8  Cir.2001) ("[S]ection [2241] does not specifically require petitioners to exhaust direct appeals before

9  filing petitions for habeas corpus. However, we require, as a prudential matter, that habeas petitioners

10 exhaust available judicial and administrative remedies before seeking relief under § 2241.") (footnote

11 omitted), abrogated on other grounds, Fernandez–Vargas v. Gonzales, 548 U.S. 30 (2006). Requiring a

12 petitioner to exhaust his administrative remedies aids "judicial review by allowing the appropriate

13 development of a factual record in an expert forum." See Ruviwat v. Smith, 701 F.2d 844, 845 (9th

14 Cir.1983) (per curiam). Use of available administrative remedies conserves "the court's time because of

15 the possibility that the relief applied for may be granted at the administrative level."  Id.  Moreover, it

16 allows "the administrative agency an opportunity to correct errors occurring in the course of

17 administrative proceedings."  Id.

18        Courts have discretion to waive the exhaustion requirement where "administrative remedies are

19 inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable

20 injury will result, or the administrative proceedings would be void."  Laing v. Ashcroft, 370 F.3d 994,

21 1000 (9th Cir.2004) (citation omitted); see also Acevedo–Carranza v. Ashcroft, 371 F.3d 539, 542 n. 3

22 (9th Cir.2004).  A "key consideration" in exercising such discretion is whether "relaxation of the

23 requirement would encourage the deliberate bypass of the administrative scheme." Laing, 370 F.3d at

24 1000 (quoting Montes v. Thornburgh, 919 F.2d 531, 537 (9th Cir.1990)).

25        The United States provides an administrative remedy process through which BOP inmates may

26 seek formal review of an issue relating to any aspect of their confinement. See 28 C.F.R. § 542.10. In

27 order to exhaust available administrative remedies within this system, an inmate must proceed through

28 four levels of review.

3

First, "before an inmate submits a Request for Administrative Remedy," the inmate must attempt to "informally resolve" the issue at the institution where it occurred by presenting the issue to staff on the required form.  See 28 C.F.R. § 542.13(a).  If the issue cannot be informally resolved within 20 calendar days from the date of the occurrence, the inmate may submit a formal written Administrative Remedy Request on the required form, commonly known as a BP–9, to the staff member designated to receive these requests.  See 28 C.F.R. § 542.14(a).  The Warden has 20 calendar days to respond to the BP–9, although this time period may be extended once by 20 days with written notice to the inmate.  See 28 C.F.R. § 542.18.

If the inmate is not satisfied with the Warden's response, he may proceed to the third level of administrative review by appealing the matter to the Regional Director of the region in which the inmate is confined within 20 calendar days from the date the Warden signed the response to the BP–9.  See 28 C.F.R. § 542.15(a). The required form for this appeal is commonly referred to as a BP–10.  See 28 C.F.R. § 542.15(b).  Once the inmate files the BP–10, the Regional Director has 30 calendar days to respond to the appeal, although this time period may be extended once by 30 days with written notice to the inmate.  See 28 C.F.R. § 542.18.

Respondent submitted evidence that Petitioner exhausted his claims at the BP-9 and BP-10 levels, and that he sought to file his BF-11 appeal at the General Counsel's level on October 1, 2012, but it was rejected on November 7, 2012 because he failed to also submit a copy of his BP-9 and BP-10 as required by § 542.15.  (Declaration of Jennifer Vickers ("Vickers Dec."), ¶ 5).  Petitioner was given fifteen days within which to re-file his appeal.  (Id. at ¶ 6).  More than a month later, Petitioner refiled his BP-11 but this filing was rejected because it was late.  (Id., ¶ 7).  Petitioner was given another fifteen days to resubmit a complying appeal but Petitioner failed to do so.  (Id.).

Notably, 28 C.F.R. § 542.15 indicates that appeals to the General Counsel "shall be submitted on the form designed for Central Office Appeals (BP–11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses. Appeals shall state specifically the reason for appeal."  Nevertheless, Petitioner argues that his BP-11 appeal was deemed denied pursuant to 28 C.F.R. § 542.18, which provides as follows:

If accepted, a Request or Appeal is considered filed on the date it is logged into the

4

Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.

Thus, Petitioner reasons, his final appeal should be deemed denied and his effort to exhaust his remedies deemed successful.

Petitioner's argument lacks support. The Court is unaware, and Petitioner does not cite, any authority for the proposition that failure to comply with the procedural requirements for administrative appeals automatically constitutes exhaustion once the appealing authority fails to issue a denial within the specified statutory period. If Petitioner's logic were sound, then, in any case in which an inmate chose not to pursue his administrative remedies or where he filed deficient paperwork at any level, he could exhaust at that level by simply waiting until after the passage of the statutorily mandated period for the reviewing authority to issue a ruling. That has never been the law. The burden here is upon the inmate to properly comply with the administrative procedures, not upon the BOP to track every procedurally rejected appeal for subsequent compliance. The simple answer is that Petitioner failed to comply with the procedures set forth to properly obtain review of his claim at the General Counsel's level, and thus, he did not exhaust his administrative appeals. For that reason, the petition is **DENIED**.

C. _Validity of Petitioner's Restitution Order_.

In any event, Petitioner's claims fail on their merits. Petitioner challenges BOP's authority to remove funds from his trust account pursuant to the IFRP where the sentencing court specified the amount of repayment but failed to establish a "schedule." It appears that Petitioner also challenges the BOP's handling of Petitioner's payments where the sentencing court specified that payments were to be made to the clerk of the court.

1. _Factual Background_

As mentioned, in 2005 Petitioner pleaded guilty to several counts of bank robbery and, as part of his sentence, was ordered to pay $50,867 in restitution to various victims as well as a $300 special

1  assessment.  (Daniel Dec., p. 4; Attach. 1).  The sentencing order indicated that the payment was "due

2  immediately" and "in full."  (Attach. 1).  Pursuant to BOP policy, and considering the Ninth Circuit's

3  ruling in Ward v. Chavez, 678 F.3d 1042 (9th Cir. 2012), the BOP's policy is not to include such

4  payments in the inmate's IFRP financial obligation.  (Daniel Dec. p. 4).  Accordingly, the restitution

5  order in Petitioner's 2005 case is currently considered "deferred" and is not part of Petitioner's current

6  IFRP financial obligation.  (Id.).  It does not appear that Petitioner is challenging either the special

7  assessment or the restitution order from that 2005 case.

8  On January 4, 2011, Petitioner was sentenced in a separate criminal proceeding in the Northern

9  District of Illinois to 105 months in prison for three counts of bank robbery.  (Daniel Dec., Attach. 4).

10  Petitioner was ordered to pay a $300 special assessment and $5,320 in restitution, as follows:

11  Lump sum payment of $300 due immediately, balance due...one quarter ¼ of defendant's
12  earnings in the Inmate Financial Responsibility Program is to be applied towards the special
    assessment and restitution. While defendant is on supervised release ten percent 10% of his net
13  monthly income is to be applied towards his outstanding restitution obligation.

14  (Daniel Dec., Attach 4).  The Special Assessment and restitution ordered in that case are now included

15  in Petitioner's ongoing IFRP obligation. (Daniel Dec., p. 5).  The sentencing order goes on to provide

16  as follows:

17  Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment,
    payment of criminal monetary penalties is due during imprisonment.  All criminal monetary
18  penalties, except those payments made through the Federal Bureau of Prisons' Inmate
    Financial Responsibility Program, are made to the clerk of the court.
19

20  (Daniel Dec., Attach 4).

21  At the time of the filing of the petition, Petitioner worked at a prison job and had earned a

22  quarterly amount of $228.94.  (Id.).  Thus, one-quarter of that amount would be $57.24.  (Id.).  The

23  payments Petitioner has already made under the IFRP are for the special assessment and restitution in

24  his 2011 case.  (Daniel Dec., p. 5).[1]

25

26  _____

27  [1] In rejecting Petitioner's BP-10 appeal, the Regional Administrator, on September 6, 2012, indicated Petitioner's current
    IFRP payments were applied toward his obligation in the earlier bank robbery conviction.  (Doc. 1, p. 12).  This appears to
    be at odds with the Declaration of Billy Daniel, dated May 13, 2013, which indicates that the IFRP payments were deducted
28  to satisfy Petitioner's obligations in his later conviction.  (Daniel Dec., p. 5).  However, it does not appear that Petitioner is
    challenging the earlier sentencing order; therefore, the discrepancy is irrelevant to the Court's analysis herein.

2. The IFRP

The BOP's IFRP applies to nearly all post-trial inmates in federal facilities and is meant to encourage inmates to meet their "legitimate financial obligations." See 28 C.F.R. § 545.10; United States v. Lemoine, 546 F.3d 1042, 1046 (9th Cir.2008). Under the IFRP, staff members develop a financial plan for each inmate and monitor his progress in adhering to that plan. See 28 C.F.R. §§ 545.10, 545.11; Lemoine, 546 F.3d at 1047. The IFRP is a voluntary program and inmates are free to decline to participate in the IFRP but the failure to participate in or to comply with a financial plan carries consequences, such as denials or limitations on furloughs, pay, work detail, commissary spending, housing status, and placement in community-based programs. See 28 C.F.R. § 545.11(d); Lemoine, 546 F.3d at 1047. In Lemoine, 546 F.3d at 1049, the Ninth Circuit held that such consequences are reasonably related to the legitimate penological interest of rehabilitation and do not constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that they invoke any constitutionally protected liberty interest.

3. The MVRA

The Mandatory Victim's Restitution Act of 1996 ("MVRA") provides in pertinent part:

(f) (1)(A) In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.

(B) In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.

(2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—

(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;

(B) projected earnings and other income of the defendant; and

(C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(1)-(2). Courts have construed the statute to require the sentencing court to specify the manner in which, and the schedule according to which, the restitution is to be paid; the court's duty to set a schedule for the payment of restitution is non-delegable. United States v. Gunning (Gunning I ),

339 F.3d 948, 949 (9th Cir.2003) (holding a district court's order making restitution payable "immediately," with any amount unpaid after the defendant's release "to be paid during the period of supervision as directed by a U.S. probation officer," assigned full control of subsequent payment to the probation office and thus constituted an impermissible delegation of the court's authority to the probation officer); United States v. Gunning (Gunning II ), 401 F.3d 1145, 1149 (9th Cir.2005) (holding the district court's order directing the payment of restitution "immediately," to be paid through the BOP's IFRP program during the time that the defendant was imprisoned, and to be paid in monthly installments of not less than ten percent of the defendant's gross income commencing thirty days after release from imprisonment, constituted an impermissible delegation of authority because there was no adequate provision for payment during the period of imprisonment between the petitioner's sentencing and the petitioner's supervised release).  Accordingly, a district court's order that restitution is due or it is to be paid "immediately," made with an expectation that the BOP or probation will work out the details of payment over time, constitutes an impermissible delegation of authority. Ward, 678 F.3d at 1047–48.

Where the court determines that the defendant has the financial ability to pay the restitution in full immediately, the order requiring payment "immediately," is permissible.  18 U.S.C. § 3664(f)(2); United States v. Martin, 278 F.3d 988, 1006 (9th Cir.2002); Ward, 678 F.3d at 1048–49; 18 U.S.C. § 3572(d) ["A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments."].  Thus, where the court determines that the defendant's financial resources are such that periodic payments are unwarranted, then it is appropriate for a district court to order payment immediately; in such circumstances, no improper delegation occurs. Ward, 678 F.3d at 1049–50; United States v. Martin, 278 F.3d at 1006 (holding that it was correct to order immediate payment where the district court had before it information concerning the defendant's financial resources that it presumably considered and found insufficient to warrant periodic payments).

In contrast, where the court determines defendant has insufficient financial resources to make immediate repayment, then the district court, as distinct from the BOP or probation, must set forth a payment schedule in the judgment of conviction. Ward, 678 F.3d at 1049.  If the court fails consider the

defendant's ability to pay but orders "immediate" payment, the restitution order is insufficient because of a failure to set forth a schedule. Id. The court in Ward summarized the authorities as follows:

> For a restitution order to be lawful, therefore, § 3664 requires that the district court set a schedule in consideration of the defendant's financial resources. If the court considers the defendant's financial resources and concludes that periodic payments are unwarranted "in the interest of justice," the order is lawful, as we concluded in Martin. If, however, the district court simply orders immediate repayment and leaves it to another agency, like the BOP, to actually set the payment schedule that the statute obligates the court to determine, that order is unlawful, as the district court has abdicated in its duty to set the schedule "in consideration of" the financial circumstances of the defendant.

Ward, 678 F.3d at 1050.  Hence, the BOP "lacks the authority to collect restitution payments through the IFRP" when the criminal judgment does not include such a schedule when the defendant is ubale to make immediate payment. Id. at 1051.

4. Analysis.

Preliminarily, the Court notes Petitioner is not challenging the constitutionality or validity of either the IFRP or the MVRA.  (Doc. 18, p. 3).  Likewise, Petitioner is not challenging the authority of the BOP to make discretionary modifications to Petitioner's restitution payments.  (Id.).  Rather, Petitioner argues the sentencing order in his 2011 conviction constitute an improper delegation of authority to the BOP  to deduct funds from Petitioner's prison trust account.

Petitioner appears to raise two challenges to his restitution payments under the MVRA.  First, Petitioner contends that because the sentencing order in his 2011 case does not satisfy the Ninth Circuit's requirements for a payment "schedule," it constitutes an improper delegation of authority from the trial court to the BOP.  (Doc. 1, pp. 9; 11).  Petitioner contends that ordering one-quarter of his prison paycheck to be deducted specifies the amount and manner of repayment, but does not satisfy the definition of a "schedule," presumably because it does not explicitly set forth the frequency with which such deductions are to be made.  (Id., p. 2).  Petitioner concedes that, had the sentencing court ordered a payment of $25 per quarter, such language would have satisfied the requirements of the MVRA and the Ninth Circuit and would have constituted a proper delegation of authority from the court to the BOP. (Id., p. 4).  However, Petitioner argues that simply specifying "one-quarter" of Petitioner's earnings is "ambiguous" and "silent" as to actual "scheduling."  (Id., p. 3).  Petitioner suggests that, under such ambiguous terms, the court's order could be satisfied by withdrawals "[e]very month, twice a month,

1    every six months or one quarter of Movants earnings a year…." (Id.).  Second, Petitioner appears to

2    argue that because the sentencing order specified that payments were to be made to the clerk of the

3    court, BOP has no authority to withdraw money from his prison trust account.  (Doc. 18, pp. 2, 4).

4            As to the first issue, Petitioner relies upon Ybarra v. Smith, 2010 WL 5362647 (Sept. 17, 2010

5    Ariz.).  In Ybarra, the trial court in the District of Arizona, ruling several years before Ward was

6    decided, held that a sentencing order requiring "all monetary penalties are due immediately or in

7    regular monthly installments" was invalid because it failed to require either.  Ybarra at *5.  Petitioner

8    reasons here that because his restitution order did not specify how frequently the payments were to be

9    made, it is invalid; the Court disagrees.

10           First, Ybarra is not binding on this Court as it was a trial court decision issued by a different

11   district.  Second, the Court disagrees with the reasoning in Ybarra is authoritative because it did not

12   have the benefit of Ward.  Ward made clear that a sentencing order that provides simply for immediate

13   payment, without more, is insufficient.  In any event, in the Court's view, the fact that the sentencing

14   order did not specifically indicate the frequency with which the BOP was to make these deductions is

15   irrelevant and does not diminish the validity of the order as a proper delegation of power to the BOP.

16           Moreover, the sentencing court in Petitioner's case expressly stated that payments were to be

17   deducted in the amount of one-quarter of each payment to Petitioner.  Obviously, the sentencing court

18   would not know to which institution Petitioner was to be sent by the BOP, nor would the sentencing

19   judge have knowledge of the specific inmate payment procedures in effect at the prison where

20   Petitioner would eventually be incarcerated.  Moreover, inmates are frequently moved to various BOP

21   facilities, each of which may have different payment schedules depending on specific BOP policies in

22   effect at those facilities.[2]  As Petitioner notes, inmates at one facility may be paid weekly, others

23   biweekly, others monthly.  If the sentencing order had indicated a specific frequency for deductions,

24   e.g., each week, and the inmate were only paid monthly at that facility, it takes little imagination to

25   envision the logistical problems this would pose for the BOP.

26           Finally, a reasonable inference from the express language of the sentencing order is that one-

27

28   _____
     [2] Indeed, since the filing of this petition, Petitioner has already been moved to two other prisons.

1    quarter of Petitioner's regular paycheck—his "earnings"—will be deducted pursuant to the IFRP,

2    regardless of the frequency of those paychecks.  Given the foregoing, this appears to be an imminently

3    reasonable schedule for the sentencing court to have imposed in this case.  As discussed previously, the

4    federal statute requires that any person sentenced to pay a fine or other monetary penalty, including

5    restitution, shall make such payment immediately, unless, in the interest of justice, the court provides

6    for payment on a date certain *or in installments*. 18 U.S.C. § 3572(d). Here, the sentencing court's order

7    that one-quarter of each paycheck be deducted to satisfy the special assessment and restitution in the

8    2011 case was sufficient to constitute an order for "installment" payments. Accordingly, the order was

9    a valid delegation of power to the BOP.

10         Second, Petitioner contends that the order only permits payment to the clerk of the court, not to

11    the IFRP or the BOP.  Petitioner misreads the sentencing order.  It expressly provides that "[a]ll

12    criminal monetary penalties, <u>except those payments made through the Federal Bureau of Prisons'</u>

13    <u>Inmate Financial Responsibility Program</u>, are made to the clerk of the court."  (Daniel Dec., Attach.

14    4)(Emphasis supplied).  Thus, the sentencing court explicitly contemplated that, should Petitioner enroll

15    in the IFRP, all court-ordered payments would be collected by the BOP through the IFRP.  Only

16    payments Petitioner makes <u>outside</u> the IFRP would go directly to the clerk of the court.  Petitioner does

17    not appear to raise any claims regarding payments made outside the IFRP.  Indeed, no evidence exists

18    Petitioner has made any non-IFRP payments.  Rather, Petitioner challenges only payments made

19    through the IFRP.  Accordingly, Petitioner's claims are without merit, and the petition will be denied

20    with prejudice.

21         Finally, the plain language of 28 U.S.C. § 2253( c)(1) does not require a certificate of

22    appealability because this would be an appeal from an order denying a petition for writ of habeas

23    corpus pursuant to 28 U.S.C. § 2241, not a final order in a habeas proceeding in which the detention

24    complained of arises out of process issued by a state court.  <u>Forde v. U.S. Parole Commission</u>, 114 F.3d

25    878 (9th Cir. 1997); see <u>Ojo v. INS</u>, 106 F.3d 680, 681-682 (5th Cir. 1997); <u>Bradshaw v. Story</u>, 86 F.3d

26    164, 166 (10th Cir. 1996).

27                                    **<u>ORDER</u>**

28         For the foregoing reasons, it is HEREBY ORDERED as follows:

1.  The petition for writ of habeas corpus (Doc. 1), is DENIED with prejudice;

2.  The Clerk of the Court is DIRECTED to enter judgment and close the file; and,

3.  No certificate of appealability is required.

IT IS SO ORDERED.

Dated:   **September 14, 2015**                     **/s/ Jennifer L. Thurston**
                                         UNITED STATES MAGISTRATE JUDGE

12